UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICIA ARNOLD,

                                 **Plaintiff,**

    vs.                                                      5:20-cv-1364
                                                               (MAD/ML)

TOWN OF CAMILLUS, NEW YORK,
THOMAS WINN, *Camillus Police
Chief*, JAMES NIGHTINGALE,
*Camillus Police Captain*, MARY ANN
COOGAN, *Camillus Town Supervisor,*
DAVID CALLAHAN, JOY FLOOD,
DICK GRIFFO, STEVEN JAMES, MIKE
LaFLAIR MARY LUBAR, JOHN DOES(S),
JANE DOES(S),

                                  **Defendants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**BOSMAN LAW FIRM, LLC**                **AJ BOSMAN, ESQ.**
3000 McConnellsville Road
Blossvale, New York 13308
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**     **DAVID M. FERRARA, ESQ.**
One Lincoln Center                              **KSENIYA PREMO, ESQ.**
Syracuse, New York 13202-1355
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff, Patricia Arnold, filed this action in the Onondaga County Supreme Court, on October 13, 2020. Dkt. No. 1 at ¶ 1. Plaintiff asserted claims for discrimination on the basis of her gender and retaliation in violation of 42 U.S.C. § 1983 and the New York State Human Rights Law against Defendants Town of Camillus, New York; Camillus Police Chief Thomas Winn;

Camillus Police Captain James Nightingale; Town Supervisor Mary Ann Coogan; Camillus Town Board members David Callahan, Joy Flood, Dick Griffo, Steven James, Mike LaFlair, and Mary Lubar; John Doe(s); and Jane Doe(s). Dkt. No. 2 at 9-11. Plaintiff also asserted a claim for intentional or reckless infliction of emotional distress against Defendant Nightingale. *Id*. at 11. Lastly, Plaintiff asserted claims for tortious interference and prima facie tort against Defendants Nightingale and Winn. *Id*. at 12.

Defendants were served with a copy of the summons and complaint on October 15, 2020. Dkt. No. 1 at ¶ 2. On November 4, 2020, Defendants filed a notice of removal from Onondaga County Supreme Court. Dkt. No. 1. On November 30, 2020, Plaintiff moved to remand her state law claims to the Onondaga County Supreme Court. Dkt. No. 9. On December 21, 2020, Defendants filed an opposition to Plaintiff's motion to remand. Dkt. No. 11. Plaintiff filed a reply on December 23, 2020. Dkt. No. 14.

Currently before the Court is Plaintiff's motion to remand. Based on the foregoing, Plaintiff's motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiff was employed by Defendants as a police officer from 2011 through August 8, 2019. Dkt. No. 2 at ¶ 15. Plaintiff asserts in her complaint that during her tenure she was subject to discrimination, harassment, and retaliation, which caused her emotional, psychological, and physical distress. *Id*. at ¶ 16. Beginning in or about 2011, Plaintiff's supervisor, Defendant Nightingale, made disparaging comments regarding Plaintiff's gender and touched Plaintiff's arms, shoulders, and back without her consent, a course of conduct which continued for almost a decade. *Id*. at ¶ 17. Defendant Nightingale also denied Plaintiff overtime, instruction, and training opportunities that were afforded to less-qualified male officers. *Id*.

In February 2018, Plaintiff reported Defendant Nightingale's sexual harassment and discrimination to Defendant Winn but expressed fear of retaliation and requested that Defendant Winn address Defendant Nightingale's behavior without a formal complaint. *Id*. at ¶ 18. Defendant Winn declined to do so. *Id*. Plaintiff asserts Defendant Nightingale continued to sexually harass her and engage in disparaging conduct. *Id*. at ¶ 19.

On April 28, 2018, Plaintiff was required to attend a ceremony celebrating Defendant Nightingale's promotion to captain. *Id*. at ¶ 20. Defendant Nightingale's promotion to captain made him in charge of Internal Affairs, which included investigating claims of harassment. *Id*.

Plaintiff again reported Defendant Nightingale's behavior to Defendant Winn in January 2019. *Id*. at ¶ 21. Defendant Winn became hostile and aggravated at Plaintiff's assertions. *Id*. On February 6, 2019, Plaintiff submitted a formal statement to Defendant Winn recounting six instances of harassment and discrimination and named three witnesses. *Id*. at ¶ 22. However, Defendant Winn again declined to investigate Plaintiff's claims and intimidated Plaintiff to prevent her from having the Town Supervisor, Defendant Coogan, investigate Plaintiff's claim. *Id*.

Plaintiff asserts that two weeks later, Defendant Winn told Plaintiff that Defendant Nightingale acknowledged the behavior and then took no other action to investigate Plaintiff's claims. *Id*. at ¶ 23. Defendant Winn then permitted Plaintiff to avoid Defendant Nightingale but did not punish Defendant Nightingale. *Id*. Plaintiff eventually resigned due to the continued harassment. *Id*. at ¶ 25. Plaintiff notified PBA[1] President Jay Pollard that she was resigning due to this harassment. *Id*. Mr. Pollard then began investigating Plaintiff's claims. *Id*. On March 2, 2020, Mr. Pollard made Defendant Coogan aware of Plaintiff's claims. *Id*.

---

[1] Plaintiff does not specify what PBA stands for. However, it is likely Plaintiff is referring to the Police Benevolent Association.

On March 11, 2020, Plaintiff participated in an exit interview with Defendants Coogan and Flood. *Id*. at ¶ 26. At this time, Plaintiff again explained that she was resigning due to the harassment she faced and the lack of investigation. *Id*. Plaintiff asserts that Defendant Coogan acknowledged that she was aware of the harassment but that Defendants Coogan and Flood repeatedly attempted to stop Plaintiff from telling them any details. *Id*. Finally, on July 13, 2020, the PBA wrote a letter to the Town Board demanding that they take action regarding substantial misconduct uncovered within the Camillus Police Department. *Id*. at ¶ 27. On July 15, 2020, Defendant Coogan agreed to hire an outside firm to investigate the conduct. *Id*.

Plaintiff filed suit on October 13, 2020 in Onondaga County Supreme Court. Dkt. No. 1 at ¶ 1. Plaintiff filed a motion for declaratory relief and leave to serve a late Notice of Claim with her complaint. Dkt. No. 9-2. Specifically, Plaintiff sought leave to serve a late Notice of Claim with respect to her tort claims and also moved for a declaratory judgment providing that she was not required to serve a Notice of Claim with respect to her Human Rights Law claims. *See id*. However, on November 4, 2020, Defendants removed the action to this Court. Dkt. No. 1. As a result, Plaintiff's motion was never ruled upon. Dkt. No. 9-5 at 1-2. Plaintiff subsequently moved for the Court to remand Plaintiff's state law claims so that the Onondaga County Supreme Court could hear her motion. *Id*.

### III. DISCUSSION

Plaintiff asserts, and Defendants agree, that the Court must remand this action regarding Plaintiff's motion for leave to serve a late Notice of Claim as it relates to her tort claims. Dkt. No. 9-5 at 4; Dkt. No. 11 at 4. However, the parties dispute whether the Court should remand Plaintiff's remaining state law claims. Plaintiff asserts that whether she was required to serve a Notice of Claim regarding her claims for a violation of the New York State Human Rights Law

4

presents a novel issue of state law and therefore must be remanded. Dkt. No. 9-5 at 5-9. Defendants assert that New York law is clear that Plaintiff was required to file a Notice of Claim and, therefore, remand is inappropriate. Dkt. No. 11 at 6-10.

Defendants also assert that Plaintiff's motion for declaratory relief is procedurally improper and should be rejected. *Id*. at 10-11. Finally, Defendants assert that remanding this action would cause Defendants to have to defend the same action in both state and federal court because the Court may not remand Plaintiff's federal claims and Plaintiff's state law claims are largely identical to her federal claims. *Id*. at 4-6.

## A.     Standard of Review

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"Once a case has been removed to federal court, a party may move to remand the case to state court." *Shapiro v. Logistec USA, Inc*., 412 F.3d 307, 310 (2d Cir. 2005). "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id*. However, a court may not remand a plaintiff's federal claims where the defendant properly removes based on the district court's original jurisdiction. *Riano v. Town of Schroeppel ex rel. Town Bd. of Town of Schroeppel*, No. 5:13-CV-352, 2013 WL 5702263, *7 (N.D.N.Y. Oct. 18, 2013) (citations omitted).

"A federal court must perform a two-step inquiry when deciding whether to exercise supplemental jurisdiction over state law claims upon removal." *Id*. "First, the court must determine whether the state law claims 'are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy[.]'" *Id*. (quoting 28 U.S.C. § 1367(a)) (alterations in original). "If this requirement is not satisfied, the court must remand the state law claims to the state court in which they were originally filed for lack of subject matter jurisdiction." *Id*. (citing 28 U.S.C. § 1441(c)(2)).

"Second, if the court concludes that the 'same case or controversy' requirement is satisfied, it must then decide whether to exercise supplemental jurisdiction based upon the factors set forth in 28 U.S.C. § 1367(c)." *Id*. Those factors are "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction." *Id.* (citing 28 U.S.C. § 1367(c).

**B.    Plaintiff's Tort Claims**

"In federal court, 'state notice-of-claim statutes apply to state-law claims.'" *MS by Cassavell-Sivere v. Rye Neck Union Free Sch. Dist*., No. 18-CV-8283, 2019 WL 2071114, *2 (S.D.N.Y. May 10, 2019) (quoting *Hardy v. N.Y. City Health & Hosp. Corp*., 164 F.3d 789, 793 (2d Cir. 1999)). "New York's notice of claim law, New York General Municipal Law § 50-e, requires service of a notice of claim within ninety days after a claim arises '[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation.'" *Id.* (quoting N.Y. Gen. Mun. Law § 50-e).

6

"Section 50–e(5) provides that a court '[u]pon application' of a plaintiff may, in its discretion, extend the time to serve a notice of claim." *Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 199-200 (E.D.N.Y. 2006) (quoting N.Y. Gen. Mun. Law § 50-e).  "[T]he overwhelming weight of authority among district courts in the Second Circuit . . . finds that Section 50–e(7) permits only certain state courts—'the supreme court or . . . the county court' in certain counties—to consider and to grant an application for an extension of time." *Henneberger*, 465 F. Supp. 2d at 200 (alterations in original).

The parties agree that the overwhelming authority has held that the Court does not have subject matter jurisdiction over Plaintiff's motion for leave to file a late Notice of Claim pursuant to section 50–e(5).  *Gibson v. Comm'r of Mental Health*, No. 04 CIV. 4350, 2006 WL 1234971, *5 (S.D.N.Y. May 8, 2006) ("Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice") (citations omitted).  Based on this authority, the Court  remands Plaintiff's state law tort claims to the Onondaga County Supreme Court.

**C.      New York Human Rights Law Claims**

Foremost, Plaintiff does not assert that the exercise of supplemental jurisdiction would be inappropriate.  In fact, both parties appear to agree that Plaintiff's New York State Human Rights Law claims and § 1983 claims should be litigated together.  *See* Dkt. No. 11 at 4; Dkt. No. 14 at 1.  Plaintiff asserts that the only way to remand Plaintiff's motion for leave is for the Court to decline to exercise supplemental jurisdiction.  Dkt. No. 9-5 at 2.  Plaintiff asserts that General Municipal Law § 50–e (hereinafter "Section 50-e") creates a novel issue of New York State law as to whether Town Law § 67 requires Plaintiff to file a Notice of Claim for her New York Human

7

Rights Law claims. Dkt. No. 9-5 at 5-6. Defendants assert that New York law clearly required Plaintiff to file a Notice of Claim and failed to do so. Dkt. No. 11 at 7-8.

"Any claim . . . against the town or town superintendent of highways for damages for wrong or injury to person or property or for the death of a person, shall be made and served in compliance with section fifty-e of the general municipal law." N.Y. Town Law § 67. "This notice of claim requirement is 'construed strictly by New York state courts,' and a '[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'" *Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 388 (S.D.N.Y. 2016) (quoting *Hardy*, 164 F.3d at 793-94).

"Service of a notice of claim is . . . not a condition precedent to commencement of an action based on the Human Rights Law in a jurisdiction where General Municipal Law §§ 50-e and 50-i provide the only notice of claim criteria." *Picciano v. Nassau Cty. Civil Serv. Comm'n.*, 290 A.D.2d 164, 170 (2d Dep't 2001). However, while Section 50-e does not extend beyond tort claims, "[t]he notice of claim provision in Town Law § 67 is not limited to claims for damages for personal injury, wrongful death, or injury to property" but includes "a cause of action under the Human Rights Law." *Id.* at 170-171 (citations omitted). "Where a plaintiff has not complied with the terms of Town Law § 67, dismissal is typically appropriate." *Croci*, 175 F. Supp. 3d at 389 (citing *Smith v. Scott*, 294 A.D.2d 11, 21 (2d Dep't 2002)). Thus, pursuant to Town Law § 67, where a plaintiff asserts state law employment discrimination claims against a municipality covered by Town Law § 67, they must have complied with the Notice of Claim requirement or their state law claims will be dismissed. *Id.*

Plaintiff asserts that *Margerum v. City of Buffalo*, 24 N.Y.3d 721 (2015) changed the requirements of Section 50–e by holding that employment discrimination actions are not subject

to the Notice of Claim condition precedent of Section 50–e. Dkt. No. 9-5 at 7-8. As a result, Plaintiff asserts that it is now unclear whether Town Law § 67 requires compliance with Section 50–e concerning employment discrimination actions. *Id*. Plaintiff is incorrect.

*Margerum* is entirely consistent with New York precedent. In 2001, the Second Department held in *Picciano*, "[s]ervice of a notice of claim is therefore not a condition precedent to commencement of an action based on the Human Rights Law in a jurisdiction where General Municipal Law §§ 50-e and 50-i provide the *only* notice of claim criteria." *Picciano*, 290 A.D.2d at 170 (emphasis added). Not only in *Margerum* were Sections 50-e and 50-i the only notice of claim criteria, the Court of Appeals specifically quoted this language from *Picciano* in support of their holding. *Margerum*, 24 N.Y.3d at 730 (quoting *Picciano*, 290 A.D.2d at 170). The Court of Appeals declined to make any reference to the rest of *Picciano* which held—in the very next sentence—that Town Law § 67 included employment discrimination claims. *Picciano*, 290 A.D.2d at 170. Contrary to Plaintiff's assertions, the Court of Appeals' opinion embraced *Picciano* and surely, if the court was attempting to overrule this requirement in *Picciano*, it would have said so.

Plaintiff presents the Court with caselaw published subsequent to *Margerum* in support of her assertion of a change in law. Dkt. No. 9-5 at 7. However, these cases, like *Margerum*, only examined Sections 50-e and 50-i as the applicable notice of claim criteria. *Id*. (citing *Gentile v. Town of Huntington*, 288 F. Supp. 2d 316, 320-21 (E.D.N.Y. 2003); *Davis v. Town of Hempstead*, No. 14-CV-903, 2019 WL 235644, *8 (E.D.N.Y. Jan. 16, 2019)). Therefore, the Court rejects Plaintiff's assertion that *Margerum* changed the Notice of Claim requirements of Sections 50-e or Town Law § 67 and, therefore, created a novel issue of state law demanding remand.

This outcome is supported by the fact that the language of Town Law § 67 is considerably broader than General Municipal Law § 50-e. By its very terms, Section 50-e is limited to "any case founded upon tort" whereas the language in Section 67 clearly incorporates Section 50-e's Notice of Claim requirement as to all types of claims, not merely those founded upon tort. *See Keles v. Yearwood*, 254 F. Supp. 3d 466, 472 (E.D.N.Y. 2017) (discussing *Margerum* and finding that Town Law § 67 clearly incorporates more than simply claims sounding in tort, including discrimination claims) (citations omitted); *see also Croci*, 175 F. Supp. 3d at 388-89 (dismissing the plaintiff's state law discrimination claims for failure to comply with Town Law § 67) (citations omitted). As such, contrary to Plaintiff's position, application of Town Law § 67 does not involve a novel interpretation of state law necessitating remand.

Remand of Plaintiff's New York State Human Rights claims is not appropriate because New York law is clear that dismissal is warranted and remand would simply require the parties to relitigate the issue before the Onondaga County Supreme Court while ultimately ending with the same result. *See Town of Brookhaven v. N.Y. State Div. of Human Rights*, 282 A.D.2d 685, 685-86 (2d Dep't 2001) ("We agree with the Supreme Court that compliance with the notice of claim requirements set forth in Town Law § 67 and General Municipal Law § 50-e is a condition precedent to the pursuit of an employment discrimination claim against a town"); *Scopelliti v. Town of New Castle*, 210 A.D.2d 308, 309 (2d Dep't 1994) ("While the plaintiff correctly argues that an action brought pursuant to Executive Law § 296 is not a tort claim which falls within the notice provisions of the General Municipal Law, nevertheless, his action must be dismissed" pursuant to Town Law § 67). Therefore, as Plaintiff's discrimination and retaliation claims pursuant to the New York State Human Rights Laws fail to comply with Town Law § 67, they are

subject to dismissal either by this Court or the Onondaga County Supreme Court. *See Croci*, 175 F. Supp. 3d at 389 (citing *Smith*, 294 A.D.2d at 21).

As the parties otherwise agree that Plaintiff's state and federal discrimination and retaliation claims should be litigated together, and since the application of Town Law § 67 to Plaintiff's New York State Human Rights law claims is well settled, the Court denies Plaintiff's motion insofar as she seeks remand of these claims.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's Motion to Remand (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Plaintiff's state law tort claims are **REMANDED;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 1, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge