**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────────

**PATRICIA ARNOLD,**

                                        **Plaintiff,**

     **vs.**                                                 **5:20-CV-1364**
                                                        **(MAD/ML)**

**TOWN OF CAMILUS, NEW YORK; POLICE**
**CHIEF THOMAS WINN; CAPTAIN JAMES**
**NIGHTINGALE; TOWN SUPERVISOR MARY**
**ANN COOGAN; DAVID CALLAHAN; JOY**
**FLOOD; DICK GRIFFO; STEVEN JAMES;**
**MIKE LAFLAIR; MARY LUBER; JOHN DOE(S);**
**and JANE DOE(S)**, *in their individual and*
*official capacities as officials, officers, agents,*
*employees, and/or representatives of the Town of*
*Camilus and/or the Camilus Police Department,*

                                      **Defendants.**

───────────────────────────────────────

**APPEARANCES:**                             **OF COUNSEL:**

**BOSMAN LAW FIRM, LLC**               **AJ BOSMAN, ESQ.**
3000 McConnellsville Road             **ROBERT J. STRUM, ESQ.**
Blossvale, New York 13308
Attorneys for Plaintiff

**BOND SCHOENECK & KING, PLLC**      **DAVID M. FERRARA, ESQ.**
One Lincoln Center                      **KSENIYA PREMO, ESQ.**
Syracuse, New York 13202-1355
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

     Plaintiff, Patricia Arnold, filed this action in the Onondaga County Supreme Court, on

October 13, 2020.  Dkt. No. 1 at ¶ 1.  Plaintiff asserted claims for discrimination on the basis of

her gender and retaliation in violation of 42 U.S.C. § 1983 and the New York State Human Rights

Law against Defendants Town of Camillus, New York; Camillus Police Chief Thomas Winn; Camillus Police Captain James Nightingale; Town Supervisor Mary Ann Coogan; Camillus Town Board members David Callahan, Joy Flood, Dick Griffo, Steven James, Mike LaFlair, and Mary Lubar; John Doe(s); and Jane Doe(s).  Dkt. No. 2 at 9-11.  Plaintiff also asserted a claim for intentional or reckless infliction of emotional distress against Defendant Nightingale.  *Id*. at 11.  Lastly, Plaintiff asserted claims for tortious interference and prima facie tort against Defendants Nightingale and Winn.  *Id*. at 12.

In a July 16, 2021 Memorandum-Decision and Order, the Court remanded all of Plaintiff's state-law claims to Onondaga County Supreme Court so that she could file a motion for leave to file a late notice of claim in that Court.  This Court retained jurisdiction over Plaintiff's federal claims and stayed this case pending a decision on Plaintiff's motion in state court.  On January 7, 2022, the Onondaga County Supreme Court denied Plaintiff's motion to file a late notice of claim and dismissed her state-law claims.

On May 3, 2022, Plaintiff filed an amended complaint, which is the operative pleading in this case.  *See* Dkt. No. 56.  In the amended complaint, Plaintiff asserts the following causes of action: (1) gender discrimination in violation of 42 U.S.C. § 1983 ("Section 1983") against all Defendants; (2) retaliation in violation of Section 1983 against all Defendants; (3) gender discrimination in violation of the New York State Human Rights Law ("NYSHRL") against all Defendants other than the Town; (4) retaliation in violation of the NYSHRL against all Defendants other than the Town; (5) reckless and/or intentional infliction of emotional distress against Defendant Nightingale; (6) tortious interference against Defendants Winn and Nightingale; and (7) prima facie tort against Defendants Winn and Nightingale.  *See id.*

2

Currently before the Court is Defendants' motion to dismiss the amended complaint, with the exception of the Section 1983 claims against Defendant Nightingale.  *See* Dkt. No. 57.

## II. BACKGROUND

Plaintiff, a female, was employed by the Town from April 4, 2011 through August 7, 2019, when she resigned from her position as a police officer with the Town's Police Department. *See* Dkt. No. 56 at ¶ 14.  Plaintiff claims that, during her employment, she was subjected "to a campaign of harassment on the basis of her gender and retaliation for her opposition to unlawful and discriminatory treatment."  *Id.* at ¶ 15.

Beginning in or about 2011, Defendant Nightingale (who was then a sergeant) made disparaging comments on the basis of Plaintiff's gender, "starting an almost decade-long campaign of harassment."  *Id.* at ¶ 16.  Plaintiff alleges that Defendant Nightingale "continued to harass Plaintiff in the form of inappropriate and uninvited touching of her arms, shoulders, and back.  This was frequent enough such that Plaintiff was subject to ridicule and Nightingale's treatment of Plaintiff became a running joke amount coworkers."  *Id.*  Additionally, as Plaintiff's supervisor, Defendant Nightingale subjected Plaintiff to disparate treatment by denying overtime, instruction, and training opportunities that were afforded to often less-qualified male officers.  *See id.*

Plaintiff made Chief Thomas Winn aware of Defendant Nightingale's sexual harassment and discriminatory denial of opportunities during a February 2018 meeting.  *See id.* at ¶ 17.  She expressed fear of retaliation from Defendant Nightingale and declined to file a formal complaint at that time.  *See id.*  Plaintiff told Defendant Winn that it was her hope that he would address Defendant Nightingale's behavior without her having to make a formal complaint, which he declined to do.  *See id.*

3

After the February 2018 meeting, Plaintiff claims that she continued to be subjected to a hostile work environment caused by Defendant Nightingale's treatment. *See id.* at ¶ 18. Plaintiff alleges that the inappropriate touching continued and was frequently joked about by coworkers. *See id.* In the summer of 2018, Plaintiff was the instructor for a sexual harassment training, but was only permitted to instruct female secretaries. *See id.* During this training session, Plaintiff alleges that Defendant Nightingale "brazenly entered the room, interrupted Plaintiff, and prematurely ended the instruction." *Id.* In Plaintiff's experience, male officers were not so limited in their opportunities to instruct or interrupted in the midst of instruction. *See id.*

Moreover, Plaintiff claims that, even though Defendant Winn was aware of the discriminatory treatment of her by Defendant Nightingale, Defendant Winn required her to attend an August 28, 2018 ceremony to celebrate Defendant Nightingale's promotion to Captain. *See id.* at ¶ 19. Plaintiff alleges that this caused her "significant stress and discomfort not only because Winn knew of Nightingale's behavior towards her from her and others, including Lt. Burlingame, but also because Winn still gave him a substantial promotion that bypassed the rank of Lieutenant altogether. The decision to promote Nightingale signaled to Plaintiff that the inappropriate touching and discrimination would never be addressed; the sexual harassment continued with no one to complain to." *Id.*

Plaintiff met with Chief Winn in January 2019 and again reported Defendant Nightingale's harassment and discrimination. *See* Dkt. No. 56 at ¶ 20. Plaintiff claims that when she stated her intention to file a formal complaint of discrimination and harassment, Chief Winn became hostile and aggravated and that his behavior and demeanor signaled to her that he did not support her and did not want her to file a complaint. *See id.*

Plaintiff submitted a written statement to Chief Winn on February 6, 2019, recounting six instances of sexual harassment by Defendant Nightingale and identified three witnesses. *See id.* at ¶ 21. Plaintiff claims that Chief Winn was again hostile toward her and "intimidated her into declining the opportunity to have Town Supervisor Mary Ann Coogan investigate the allegations instead of himself. He stated to Plaintiff that Town Supervisor Coogan was aware of Plaintiff's allegations." *Id.* Plaintiff further alleges that "Defendant Coogan became aware of Plaintiff's allegations of sexual harassment in 2018 and, upon information and belief, shared this information with each Defendant Board Member at such time." *Id.* "Neither Defendant Coogan nor any of the Defendant Board Members took any action to investigate Plaintiff's allegations or otherwise protect her from the discriminatory conduct, knowing that they had a duty to do so." *Id.* Plaintiff contends that "[s]uch actions constitute a policy, custom and practice of discrimination and retaliation." *Id.*

Approximately two weeks later, Defendant Winn met with Plaintiff to inform her that Defendant Nightingale had acknowledged "he might have done" the reported discriminatory and harassing behavior. *See id.* at ¶ 22. Defendant Winn did not speak with any of Plaintiff's witnesses. *See id.* Rather, Plaintiff claims that "talking to Nightingale was the beginning and end of the 'investigation.'" *Id.* Defendant Winn suggested that Plaintiff could avoid contact with Defendant Nightingale by reported to Lieutenant Burlingame going forward, "but did little if anything to discipline the harasser." *Id.* Defendant Winn allegedly advised Defendant Nightingale "to keep the allegations private to himself" and asked Plaintiff who else she had discussed the allegations with. *Id.* Plaintiff claims that it was "clear that Chief Winn was more concerned with minimizing the incidents and protecting Nightingale's reputation than protecting Plaintiff and others from unrelenting sexual harassment and discrimination." *Id.*

5

Plaintiff claims that the hostile work environment continued as she was forced to continue working with Defendants Nightingale and Winn with the knowledge that no action would be taken to protect her from further adverse treatment. *See id.* at ¶ 23. The associated anxiety caused her tightness in her chest and insomnia, which ultimately forced her to resign from the Camillus Police Department on August 8, 2019, "to escape this hostility and protect her health." *Id.*[1]

In July 2019, prior to her resignation, Plaintiff notified PBA President Jay Pollard that she was leaving the Camillus Police Department due to and as a result of Chief Winn and the Department's lack of investigation or other adequate response to her complaints about Defendant Nightingale. *See id.* at ¶ 25. Thereafter, Mr. Pollard and the PBA Executive Board began investigating other complaints about Defendant Nightingale's behavior. *See id.* On March 4, 2020, Mr. Pollard met with Town Supervisor Coogan who was again made explicitly aware of Plaintiff's harassment complaints and the other complaints uncovered by the PBA's investigation. *See id.*

On March 11, 2020, seven months after her resignation, Plaintiff met with Supervisor Coogan for an "exit interview" at Camillus Town Hall conducted at the request of the PBA. *See* Dkt. No. 56 at ¶ 26. Also present at this meeting was Town Board Member Jay Flood. *See id.* In

---

[1] Defendants have included as an exhibit to their motion to dismiss Plaintiff's July 31, 2019 resignation letter addressed to Defendant Winn. *See* Dkt. No. 57-2. In this letter, Plaintiff explains that she has accepted a position with the Syracuse Police Department and apologizes for "short notice" she was giving. *See id.* Plaintiff concludes the letter as follows: "I would like to sincerely convey my appreciation to you and this department as I have had tremendous experiences and opportunity. I am extremely grateful for the trust and responsibility that you placed on me as it assisted me in growing as an officer and a person. Thank you for all of your support and assistance in this law enforcement journey." *Id.* Since this letter was not attached as an exhibit to the complaint or integral to it, the Court will not consider the content of this letter in deciding Defendants' motion to dismiss. *See Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 273 (W.D.N.Y. 2014).

response to her questioning regarding why Plaintiff left the Department, Plaintiff once again recounted the harassment she faced, her complaints to Chief Winn, her formal harassment complaint, and Chief Winn's "subsequent sham 'investigation.'" *Id.* "Notably, Coogan acknowledged that she was aware of Plaintiff's original complaint in 2018." *Id.* Plaintiff further claims that, "[a]t least three times during this interview, Coogan and Flood attempted to stop Plaintiff from continuing; they did not genuinely want to know the details of what she had faced and consistent with the Town's custom and policy ..., sought to suppress Plaintiff from speaking about and turn a blind eye to sex discrimination and harassment." *Id.*

On July 13, 2020, due to Town Supervisor Coogan's refusal to meet, "the PBA wrote a letter demanding the Town Board take action on the substantial misconduct uncovered within Camillus PD.  Coogan, on July 15, met with Pollard and agreed to have an outside firm investigate these allegations." *Id.* at ¶ 27.  The Town subsequently hired Phillip J. LeRoux of Affirmed H.R. Consulting, LLC to conduct this investigation.  *See id.* "Upon information and belief, the hiring of this company to do said 'investigation' was based in large part to this association and friendship with David Ferrara, Town Attorney." *Id.*

### III. DISCUSSION

**A.    Standard of Review**

Judgment on the pleadings may be granted under Rule 12(c) of the Federal Rules of Civil Procedure "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).  "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."

*Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999); *see also Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.    *Monell* Liability**

Defendants contend that the Section 1983 claims against the Town of Camillus (the

"Town") must be dismissed because Plaintiff has failed to sufficiently plead that the Town

maintained any policy or custom which deprived her of equal protection under the law.  *See* Dkt.

No. 57-3 at 12.  Defendants argue that Plaintiff's attempt to cure her prior pleading deficiencies

by including a number of "examples" of the Town's allegedly discriminatory customs, policies,

and practices is insufficient, since the complaint is "remarkably devoid of specificity" and the

examples are "riddled with speculation and lack factual amplification."  *Id.* at 12-13.  In response,

Plaintiff contends that the amended complaint expressly alleges that the Town "'has a custom,

practice and policy of discrimination against women'" and that this unconstitutional policy was

the proximate cause of her injuries.  *See* Dkt. No. 59 at 11 (quoting Dkt. No. 56 at ¶ 34).  Further,

Plaintiff maintains that the examples provided in the amended complaint clearly demonstrate the

existence of a such a policy and that they are sufficient to satisfy the third and fourth prongs of

establishing *Monell* liability.  *See id.* at 11-16.

To establish a municipal liability claim, "a plaintiff is required to plead and prove three

elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)

(quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Frost v. N.Y.C.*

*Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020).  A plaintiff can establish an official policy or

custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.  *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 Fed. Appx. 10, 13-14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Village of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions); *see also Hansen v. Watkins Glen Cent. Sch. Dist.*, 832 Fed. Appx. 709, 715 (2d Cir. 2020) (affirming the district court's finding that the defendant's "restricted access to school property on only four other occasions in the more than ten years he served as a [s]uperintendent" did not amount to a custom or policy).  "Deliberate indifference is not demonstrated on every occasion that a plaintiff has reported potential rights violations to a policymaker: rather, constitutionally cognizable deliberate indifference is a 'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *O'Kane v. Plainedge Union Free Sch. Dist.*, 827 Fed. Appx. 141, 143 (2d Cir. 2020) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).

"[U]nder *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rights*

*Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999); *see also Rutigliano v. City of New York*, 326 Fed. Appx. 5, 9 (2d Cir. 2009).  "[E]ven in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, 'the combined acts or omissions of several employees acting under a governmental policy or custom may violate' those rights." *Barrett*, 194 F.3d at 350 (quotations omitted).  In addition, where "the individual defendants violated plaintiff's rights but nonetheless enjoy qualified immunity," a plaintiff can pursue a *Monell* claim.  *Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 582 (2d Cir. 2009) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001)).

### 1. Municipal Policy or Custom

In the amended complaint, Plaintiff sets forth the following allegations in support of *Monell* liability:

> 35.   Defendant Town disqualified and refused to hire, on different occasions over the course of approximately ten (10) years, six (6) female applicants without basis in favor of fifteen (15) less qualified male applicants.  Plaintiff learned that Defendants' false excuse for not hiring some or all of these women was due to their "background," yet each was thereafter hired by other law enforcement agencies.

> 36.   Defendant Town denied Plaintiff's two (2) requests to attend "street survival school" training while selecting approximately eight (8) men instead, some of whom had less seniority than Plaintiff.

> 37.   Defendant Town ignored Plaintiff's requests, made to Defendant Nightingale, for permission to attend training sponsored by Federal/State law enforcement organizations, including an FBI negotiator instruction school.  Upon information and belief, male officers are routinely permitted to attend similar training programs.

> 38.   Defendant Town selected a male sergeant over a female sergeant for promotion to lieutenant.  After the female sergeant complained that her non-selection was discriminatory, she was assigned as a "Staff Sergeant," a

position that had been previously eliminated.  Upon information and belief, the female sergeant was given this position to avoid scrutiny of the male officer's promotion.

39.  Upon information and belief, Defendant Town disregarded a female employee's complaint that Chief Winn was subjecting her to harassment because she became intimately involved with a male officer.  After learning of the relationship, Winn extended the female employee's probation without basis and subjected her to undue scrutiny of her private life.  Winn does not subject male employees to similar scrutiny.  The employee complained to Defendant Coogan regarding Winn's behavior and Coogan disregarded the complaint.

40.  Defendant Town treats serious misconduct of male officers with tolerance.  For example, a male officer was given a "slap on the wrist" after he was involved in an off-duty physical altercation.  This male officer's conduct was particularly egregious and required the intervention of an outside law enforcement agency.  The male officer reportedly used a racial slur during the incident.  Notwithstanding the serious nature of the male officer's misconduct, his employment was retained by the Town.  By contrast, Defendant Town imposes stricter scrutiny for alleged misdeeds by female officers.  Defendant Town issued a counseling memo to Plaintiff.  Plaintiff disputed its accuracy, requested its removal, and was assured by Defendant Winn that it would be removed.  When she reviewed her personnel file a year later, it remained in her file.  Other than this counseling memo, Plaintiff had a clean disciplinary record.  Upon information and belief, had such a counseling memo been issued to a male officer it would have been purged.

Dkt. No. 56 at ¶¶ 35-40.  Plaintiff argues that these allegations, along with those that specifically relate to Plaintiff, are sufficient to set forth a *Monell* claim.  *See* Dkt. No. 59 at 12-13.

In the present matter, the Court finds that Plaintiff has failed to plausibly allege that the Town maintained a policy or custom which deprived her of equal protection under the law. Plaintiff has not identified any formal town policy that has deprived her of equal protection and, while the allegedly discriminatory policy or practice need not be formally memorialized, in order

to establish the existence of a municipal policy or custom for purposes of Section 1983 Plaintiff must demonstrate that the Town has a "persistent and widespread" practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Ruiz v. City of New York*, No. 14-cv-5231, 2015 WL 5146629, *11 (S.D.N.Y. Sept. 2, 2015). The allegations in the amended complaint fall short of this high standard.

As mentioned above, Plaintiff provides "examples" of the Town's allegedly discriminatory customs, policies, and practices, but the amended complaint is still devoid of specificity. Initially, Plaintiff alleges that the Town maintains a practice and policy of not hiring women insofar as it "refused to hire" six unnamed female applicants over a period of ten years in favor of fifteen unnamed male applicants. *See* Dkt. No. 56 at ¶ 35. Plaintiff fails to provide details as to who these male and female applicants were, when they applied for a position with the Town, what the position was, or who was involved in the allegedly discriminatory hiring practice. This conclusory allegation is too lacking in detail "to nudge plaintiff['s] claims across the line from conceivable to plausible," and is therefore insufficient to support her claim. *See Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34, 2014 WL 6473527, *11-12 (E.D.N.Y. Nov. 17, 2014) (citing cases where alleging facts "upon information and belief" was insufficient to support *Monell* liability against the municipal defendant on the plaintiffs' Equal Protection claim). Moreover, accepting Plaintiff's allegations as true as the Court must on a motion to dismiss, the failure to hire six female applicants over a period of ten years is insufficient to establish a policy, pattern or practice of the kind required to state a claim for municipal liability. *See Durr v. Slator*, 558 F. Supp. 3d 1, 36 (N.D.N.Y. 2021). Moreover, Plaintiff offers no facts tending to suggest that these unnamed applicants were not hired because of their sex. *See Kajoshaj v. City of New*

13

*York*, No. 11-cv-4780, 2013 WL 249408, *3 (E.D.N.Y. Jan. 23, 2013), *aff'd*, 543 Fed. Appx. 11 (2d Cir. 2013).

Plaintiff also alleges that the Town denied her requests to attend certain training programs, including a street survival program and federal and state law enforcement training. *See* Dkt. No. 56 at ¶¶ 36-37. Again, Plaintiff merely alleges that "upon information and belief" male officers were permitted to attend similar training and this kind of conclusory allegation is insufficient to support her claim. *See Haggood*, 2014 WL 6473527, at *12 ("Since all of plaintiffs' allegations, made 'upon information and belief,' pertaining to the treatment of non-African American employees received at [defendant-employer] are entirely conclusory, they are not entitled to the assumption of truth and are insufficient to withstand a motion to dismiss") (citations omitted); *Kajoshaj*, 543 Fed. Appx. at 15 (affirming dismissal of the plaintiffs' equal protection claims where the plaintiffs pled "upon information and belief that the [defendant] promoted to sixth grade 'non-Muslim students from families of non-Albanian origin' who had test scores and grades similar to [the plaintiffs' chid]"). Moreover, as Defendants correctly note, assuming these discrete denials of Plaintiff's requests for particular training did occur, they are insufficient to plausibly allege a Town policy, practice, or custom of disparate treatment on the basis of sex. *See Dotson v. City of Syracuse*, No. 5:18-cv-750, 2019 WL 2009076, *10-11 (N.D.N.Y. May 7, 2019) (dismissing the plaintiff's *Monell* claim based against the municipal defendant where the plaintiff alleged a pervasive practice of "discriminatory hiring, discipline, lack of promotion, retaliation, and disparate treatment of women and minority employees of the City of Syracuse Police Department," finding this conclusory allegation insufficient despite the defendant Chief of Police's knowledge of this alleged practice, where the plaintiff fail to allege facts supporting the alleged pervasive and widespread practice and custom).

14

Plaintiff also broadly asserts that female officers are subjected to greater scrutiny and more severe discipline than male officers. *See* Dkt. No. 56 at ¶¶ 39 & 40. In support of the vague comparisons she attempts to draw, Plaintiff alleges that "[Chief] Winn does not subject male employees to similar scrutiny" and "Defendant Town treats serious misconduct of male officers with tolerance." *Id.* Such bald assertions are insufficient to support her equal protection claim against the Town. *See Kajoshaj*, 543 Fed. Appx. at 16. Similarly, Plaintiff references a counseling memorandum she received and asserts "upon information and belief" that "had such a counseling memo been issued to a male officer it would have been purged" from his personnel file. *See* Dkt. No. 56 at ¶ 40. This allegation – which is the height of speculation – is insufficient to support her Section 1983 municipal liability claim. *See D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005), *aff'd*, 180 Fed. Appx. 232 (2d Cir. 2006) (holding that the plaintiff's "allegations of selective treatment [were] wholly conclusory ... [and] insufficient to defeat a motion to dismiss" where the plaintiff alleged "upon information and belief" that other students "who engaged in similar or more severe conduct ... received suspensions of a lesser duration" than he did).

The "examples" that Plaintiff includes in the amended complaint are insufficient to nudge Plaintiff's municipal liability claim from conceivable to plausible. Accordingly, the Court finds that Plaintiff has failed to plausibly allege a custom or policy that could support *Monell* liability.

### 2. Deliberate Indifference by a Municipal Policymaker

Plaintiff also contends that Defendants Winn and Coogan, as municipal policymakers, were deliberately indifferent to the constitutional deprivations she was subjected to. *See* Dkt. No. 59 at 15-16.

15

Although Plaintiff's amended complaint is generally light on specifics, including the names of any individual involved or the dates of these alleged incidents, the Court finds that, at this stage, Plaintiff has plausibly alleged *Monell* liability.  Defendant Winn, as the Camillus Police Chief, was clearly a policymaker.  In the amended complaint, Plaintiff alleges that she met with Defendant Winn in February 2018 and complained of Defendant Nightingale's sexual harassment and discriminatory denial of opportunities.  *See* Dkt. No. 56 at ¶ 17.  Although Plaintiff declined to file a formal complaint at that time because she feared retaliation, "Plaintiff told Winn that it was her hope that he would address Nightingale's behavior without her having to make a formal complaint," which he declined to do.  *See id.*

Plaintiff further alleges that, after this meeting and Defendant Winn's inaction, she continued to be subjected to a hostile work environment caused by Defendant Nightingale's treatment.  *See id.* at ¶ 18.  The inappropriate touching continued and was joked about by coworkers.  *See id.*  Despite this knowledge, Defendant Winn promoted Defendant Nightingale to the rank of Captain in August 2018, making him in charge of Internal Affairs and responsible for investigating claims of harassment.  *See id.* at ¶ 19.  During the January 2019 meeting, Defendant Winn became upset when Plaintiff stated her intention to file a formal complaint against Defendant Nightingale and signaled to her that he did not want her to file a formal complaint.  *See id.* at ¶ 20.  Finally, on February 6, 2019, Plaintiff submitted a written statement to Defendant Winn recounting six instances of sexual harassment by Defendant Nightingale and identified three witnesses.  *See id.* at ¶ 21.  Defendant Winn again became agitated and declined Plaintiff's suggestion of having Defendant Coogan investigate the allegations instead of himself.  *See id.* "Approximately two weeks later, Winn met with Plaintiff to inform her that Nightingale had acknowledged 'he might have done' the reported discriminatory and harassing behavior."  *Id.*

Defendant Winn, however, did not speak with Plaintiff's witnesses and it was clear that the discussion with Defendant Nightingale was the entire investigation.  *See id.* at ¶ 22.

Although the Court believes that this case presents a close call, the Court finds that the amended complaint plausibly alleges that Defendant Winn, as a municipal policymaker, had actual notice of "a pattern of constitutionally offensive acts" by Defendant Nightingale, but failed to take remedial steps in response.  *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983); *see also SB on behalf of AB v. Newark Cent. Sch. Dist.*, No. 6:21-cv-6138, 2022 WL 541773, *8 (W.D.N.Y. Feb. 23, 2022) (holding that the plaintiff plausibly alleged an equal protection claim against the municipal defendants where the complaint alleged that officials had actual notice of the individual defendants pattern of sexual harassment of students yet failed to properly investigate the allegations); *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 601-02 (N.D.N.Y. 2016) (holding that the plaintiff plausibly alleged an equal protection claim against the municipal defendant where she alleged that the policymaking officials failed to take any meaningful corrective or preventative actions despite being warned on multiple occasions of the individual defendant's improper and increasingly sexualized misconduct).  As such, the Court denies Defendants' motion to dismiss Plaintiff's *Monell* claims against the Town.

**C.     Section 1983 Claims Against the Individual Defendants**

Defendants seek dismissal of Plaintiff's Section 1983 claims against the Individual Defendants, with the exception of Defendant Nightingale, arguing that they were not personally involved in the alleged unconstitutional conduct.  *See* Dkt. No. 57-3 at 16-22.

It is well settled that "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Breton v. City of New York*, 404 F. Supp. 3d 799, 812 (S.D.N.Y. 2019) (quoting *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir.

17

2010)).  Thus, "a plaintiff must 'allege a tangible connection between the acts of a defendant and

the injuries suffered.'" *Beauchine v. City of Syracuse, New York*, No. 5:21-cv-845, 2022 WL

561548, *15 (N.D.N.Y. Feb. 24, 2022) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986)).

      Before the Supreme Court's *Iqbal* decision, the Second Circuit identified five categories of

evidence to show the personal involvement of a supervisory defendant:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing
> to act on information indicating that unconstitutional acts were
> occurring.

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995).  However, this standard was called into question

when the Supreme Court precluded special standards for supervisory liability under 42 U.S.C. §

1983.  *See Iqbal*, 556 U.S. at 676-77.  The Supreme Court made clear that "a plaintiff must plead

that each government-official defendant, through the official's own individual actions, has

violated the Constitution."  *Id.* at 676.  The Court reasoned that the showing of culpability

required to hold a supervisory government official liable for a constitutional violation can be no

less than is required for anyone else charged with the same violation.  *See id.* at 676-77.  The

Supreme Court reemphasized that a government official, "his or her title notwithstanding, is only

liable for his or her own misconduct" and rejected the claim that "a supervisor's mere knowledge

of his subordinate's discriminatory purpose amounts to the supervisor's violating the

Constitution." *Id.*

The Second Circuit recently clarified the standard to be applied to a claim of supervisory liability in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).  In that case, the plaintiff alleged that she was sexually abused by correction officers in prison.  *See Tangreti*, 983 F.3d at 612.  She brought suit under Section 1983 against eight prison supervisors, including a supervising counselor at the correctional institute who oversaw a substance abuse program, alleging that they violated the Eighth Amendment through their deliberate indifference to the substantial risk of sexual abuse by three corrections officers.  The district court denied the supervising counselor's motion for summary judgment, finding she was "conceivably personally involved" in violations against the plaintiff because she "was grossly negligent in supervising the officers or because she failed to act on information indicating that Tangreti was at substantial risk of sexual abuse." *Tangreti v. Semple*, No. 3:17-cv-1420, 2019 WL 4958053, *19 (D. Conn. Oct. 8, 2019).

The Second Circuit rejected that conclusion and reversed.  The court noted that after *Iqbal*, there can be no "special rule for supervisory liability" — rather, as the Supreme Court made clear, each supervisor must have, through his or her own individual actions, violated the constitution.  *Id.* at 612.  "The focus is on what the *supervisor* did or caused to be done, 'the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else.'" *Tangreti*, 983 F.3d at 618 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)) (emphasis in original). Applying this principle, the court concluded that the plaintiff had not adduced sufficient evidence to support an inference that the defendant supervising counselor, personally and "through her own actions, displayed deliberate indifference to the substantial risk of sexual abuse." *Id.*  As the court noted, "for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a

substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Put another way, for a supervisory official to be liable, the official must "personally" know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 619 (quoting *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020)).[2]  Additionally, while knowledge of a substantial risk of harm in an Eighth Amendment claim may be sufficient to establish a supervisor's personal involvement, "it is not necessarily sufficient to impose liability in a discrimination/retaliation case." *Miller v. Carroll*, No. 3:21-cv-14, 2022 WL 903283, *12 (D. Conn. Mar. 28, 2022).

### 1. Chief Winn

Defendants contend that Plaintiff has failed to allege the personal involvement of Defendant Winn.  *See* Dkt. No. 57-3 at 17-18.  Specifically, Defendants claim that Plaintiff is attempting to rely on a theory of supervisory liability specifically rejected in *Tangreti* – specifically, that Defendant Winn failed to adequately supervise and/or correct Defendant Nightingale's conduct.  *See id.*  In response, Plaintiff argues that she has adequately alleged that Defendant Winn intentionally failed to act on her complaints because of his own gender bias.  *See* Dkt. No. 59 at 17-18.

In the present matter, the Court finds that Plaintiff has failed to plausibly allege that Defendant Winn was personally involved in the alleged discriminatory conduct.  Plaintiff does

---

[2] The Second Circuit also cited favorably the Eighth Circuit decision of *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 534-35 (8th Cir. 2009) (*en banc*), which held as follows: "In a § 1983 case an official 'is only liable for his ... own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisory liability. ... [The official] is thus only liable if he personally displayed deliberate indifference to the [relevant] hazards."

not allege that he was personally involved in any decision to deny her opportunities afforded to less qualified male officers.  Rather, the amended complaint specifically alleges that "[Defendant] Nightingale subjected Plaintiff to disparate treatment by denying overtime, instruction, and training opportunities that were afforded to often less-qualified male officers."  Dkt. No. 56 at ¶ 16.  Plaintiff simply alleges that she made Defendant Winn aware of the alleged sexual harassment and denial of opportunities and that he failed to take appropriate corrective action.  *See id.* at ¶ 17.  Following *Tangreti*, these allegations are insufficient to demonstrate Defendant Winn's personal involvement in the alleged discriminatory conduct.  *See Peck v. Cnty. of Onondaga, New York*, No. 5:21-cv-651, 2021 WL 3710546, *11 (N.D.N.Y. Aug. 19, 2021) (holding that the plaintiff's allegations that Undersheriff Cassalia failed to remedy discriminatory practices that the plaintiff raised during a meeting and his dismissal of a complaint regarding a discriminatory act perpetrated by another are insufficient to allege his personal involvement in the alleged discrimination and retaliation); *Stoutenger v. City of Fulton*, ___ F. Supp. 3d ___, 2022 WL 1909918, *15 (N.D.N.Y. 2022) (holding that the plaintiff's allegations that the mayor "'has been and continues to be deliberately indifferent to the ongoing unconstitutional acts described herein and grossly negligent in supervising those under her who also subjected Plaintiff to illegal gender discrimination'" is insufficient to allege the mayor's personal involvement in the discriminatory and retaliatory conduct); *Fellah v. City Univ. of New York*, No. 20-cv-6423, 2022 WL 4619902, *6 (S.D.N.Y. Sept. 30, 2022) (holding that the plaintiff failed to plausibly allege the personal involvement of the supervisor defendant in the alleged hostile work environment where his allegations simply established that the supervisor defendant failed to take sufficient action to remedy the plaintiff's work situation and the plaintiff failed to allege that the supervisor defendant did anything to actively create the hostile work environment); *Quinones v. City of*

*Binghampton*, No. 19 Civ. 1460, 2022 WL 43764, *5 (N.D.N.Y. Jan. 5, 2022) (holding that the allegation that the defendant "'failed to take any ameliorative action,' after receiving notice of pervasive racism" was insufficient to demonstrate personal involvement).

In her amended complaint, Plaintiff claims that when she reported the alleged discriminatory treatment to Defendant Winn on February 6, 2019, he was "again hostile toward her and intimidated her into declining the opportunity to have Town Supervisor Mary Ann Coogan investigate the allegations instead of himself." Dkt. No. 56 at ¶ 21. Plaintiff argues that such allegations are sufficient to demonstrate Defendant Winn's personal involvement. The Court disagrees. This conclusory allegation regarding Defendant Winn's alleged hostility towards her is insufficient to demonstrate Defendant Winn's personal involvement in the underlying discriminatory conduct or to independently demonstrate that he created a hostile work environment. *See Wilson v. Hanrahan*, 804 Fed. Appx. 58, 62 (2d Cir. 2020) (holding that the plaintiff's Section 1983 hostile work environment claim against the plaintiff's supervisor was properly dismissed in part because it was unclear what discriminatory events had been reported to the supervisor, and the supervisor's own conduct was not sufficient to create a hostile work environment despite multiple remarks from the supervisor).

Accordingly, the Court finds that Plaintiff has failed to plausibly allege that Defendant Winn was personally involved in the alleged unconstitutional conduct and grants this aspect of Defendants' motion to dismiss.

### 2. Town Supervisor Coogan

Defendants also contend that Plaintiff's Section 1983 claims against Defendant Coogan must be dismissed because Plaintiff has failed to plausibly allege her personal involvement in the alleged unconstitutional conduct. *See* Dkt. No. 57-3 at 19-20. In response, Plaintiff contends that

she has plausibly alleged that Defendant Coogan "intentionally failed to act on Plaintiff's complaints because of her own gender bias" and that she was aware of Plaintiff's complaints in 2018 and 2019.  *See* Dkt. No. 59 at 18-19.

As with Defendant Winn, the allegations against Defendant Coogan are insufficient to demonstrate her personal involvement.  Plaintiff does not allege that she ever spoke directly with Defendant Coogan while she was employed by the Town regarding the alleged harassment by Defendant Nightingale.  Rather, Plaintiff simply vaguely alleges that Defendant Coogan was aware of the alleged harassment while it was occurring, and that Defendant Winn declined Plaintiff's offer in her February 6, 2019 letter to Defendant Winn to have Defendant Coogan investigate the claims in the letter.  *See* Dkt. No. 56 at ¶ 21.  The only non-conclusory allegations relating to Defendant Coogan are that on March 4, 2020, Mr. Pollard met with her to discuss the results of his investigation and that on March 11, 2020, Plaintiff met with her for an "exit interview."  *Id.* at ¶¶ 25-26.  Both of these events, however, occurred nearly seven (7) months after Plaintiff resigned from her position with the Town.  These allegations fall far short of establishing Defendant Coogan's personal involvement in the alleged unconstitutional conduct.

Accordingly, the Court grants Defendants' motion to dismiss as to the Section 1983 claims against Defendant Coogan.

### 3. The Town Board Members

Defendants similarly argue that Plaintiff's amended complaint fails to plausibly allege the personal involvement of the Town Board Members.  *See* Dkt. No. 57-3 at 20-21.  The Court agrees.

In the amended complaint, Plaintiff alleges that "Defendant Coogan became aware of Plaintiff's allegations of sexual harassment in 2018 and, upon information and belief, shared this

information with each Defendant Board Member at such time.  Neither Defendant Coogan nor any of the Defendant Board Members took any action to investigate Plaintiff's allegations or otherwise protect her from the discriminatory conduct, knowing that they had a duty to do so." Dkt. No. 56 at ¶ 21.  Plaintiff fails to articulate what information was relayed to each Board Member, let alone when, where, and how such information was shared with them.  This allegations is clearly insufficient to plausibly allege the Town Board Members personal involvement in the alleged discriminatory conduct.  Moreover, the amended complaint fails to plausibly allege that the Town Board Members' alleged misconduct was motivated by an impermissible intent to discriminate on the basis of Plaintiff's gender.  *See Rys v. Grimm*, No. 6:19-cv-1251, 2021 WL 6277298, *9 (N.D.N.Y. Aug. 12, 2021) (dismissing the plaintiff's Section 1983 claims against the defendant school board members where the plaintiff failed to allege "anything indicating that they were personally involved in any conduct leading up to such termination from which the Court could reasonably infer that their decision to terminate her was tainted by a gender discriminatory motive").

Finally, Plaintiff's Section 1983 claims against the Town Board Members fail for the additional reason that she has engaged in impermissible group pleading, offering nothing to specifically indicate the extent of any individual Board Member's involvement in the complained-of unconstitutional conduct.  "As a corollary to the personal-involvement rule, complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" *Wilson v. Cnty. of Ulster*, No. 1:20-cv-104, 2022 WL 813958, *7 (N.D.N.Y. Mar. 17, 2022) (quotation and other citations omitted).

Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's Section 1983 claims against the Town Board Members.

**D.     The NYSHRL Claims**

In the third and fourth causes of action, Plaintiff alleges that the individual Defendants discriminated and retaliated against her in violation of the NYSHRL.  *See* Dkt. No. 56 at ¶¶ 50-55.  Defendants note that, after extensive motion practice before this Court and the New York State Supreme Court, Plaintiff's NYSHRL claims against the Town were dismissed with prejudice due to Plaintiff's failure to serve a notice of claim as required by Town Law § 67.  Defendants argue that Plaintiff's failure to serve a notice of claim is also fatal to her NYSHRL and tort law claims against the individual Defendants in their official capacities.  *See* Dkt. No. 57-3 at 23-25. Defendants also claim that the NYSHRL claims must be dismissed against the individual Defendants in their individual capacities because the notice of claim requirement in General Municipal Law § 50-e is applicable to defendants sued in their personal capacities when a municipality has "a statutory obligation to indemnify such person."  *Id.* at 23.  Defendants argue that since Section 3.2 of the Town's Municipal Code provides for the indemnification of Town employees acting within the scope of their employment, the failure to file a notice of claim is fatal to this claim.  *See id.* at 23-24.  In response, Plaintiff initially argues that the "New York Court of Appeals has expressly held that New York's general Notice of Claim statute, i.e., General Municipal Law § 50-e, does not apply to employment discrimination claims brought pursuant to the Human Rights Law as they are not torts" and, therefore the Court should deny Defendants' motion.  *See* Dkt. No. 59 at 21.[3]  Additionally, Plaintiff claims that Town Law § 67 does not apply

---

[3] This is an interesting position considering that this Court previously rejected this very argument in deciding the motion to remand since this action is governed by Town Law § 67.  *See Arnold v. Town of Camillus, New York*, No. 5:20-cv-1364, 2021 WL 326886, *4-5 (N.D.N.Y. Feb. 1, 2021) (rejecting Plaintiff's argument that the Court of Appeals decision in *Margerum v. City of Buffalo*, 24 N.Y.3d 721 (2015) determined that a notice of claim is no longer required in employment discrimination claims brought against a town).  Moreover, if this argument was

(continued...)

to employees or agents of a town and, therefore, does not apply to the individual Defendants. *See id.* Next, Plaintiff argues in the alternative that the Town is not under an obligation to indemnify the individual Defendants in this action because the amended complaint alleges that they were acting with an unlawful discriminatory purpose. *See id.* at 21-22.

> Section 67 of the New York State Town Law provides as follows:
>
>> 1. Any claim including a claim specified in section sixty-five-a of this chapter which may be made against the town or town superintendent of highways for damages for wrong or injury to person or property or for the death of a person, shall be made and served in compliance with section fifty-e of the general municipal law.
>>
>> 2. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.
>>
>> 3. This section shall not apply to actions upon claims for damages or compensation for property taken by condemnation for any public purpose.

N.Y. Town Law § 67.  "[I]n a federal court, state notice-of-claim statutes," like those contained in Town Law § 67 and General Municipal Law §§ 50-e and 50-i, "apply to state-law claims." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir.1999) (emphasis omitted).  This notice of claim requirement is "construed strictly by New York state courts," and a "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  *Id.* at 793-94 (internal quotation marks omitted).

Here, the case law is clear that "injury to person" that Town Law § 67 contemplates includes employment discrimination claims brought pursuant to Executive Law § 296.  *See Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 389 (S.D.N.Y. 2016) (citing cases).  Town Law § 67

---

[3](...continued)
correct, Plaintiff would still have a NYSHRL claim against the Town, which she does not because of her failure to file a notice of claim.

does not have its own separate notice requirement, but instead expressly states that "[e]very action" brought against a town "shall be commenced pursuant to the provisions of section fifty-i of the general municipal law," N.Y. Town Law § 67(2), and further states that the claim "shall be made and served in compliance with section fifty-e of the general municipal law."  N.Y. Town Law § 67(1).

General Municipal Law § 50-e provides that a notice of claim is not required where an action names an officer, appointee or employee of a public corporation, rather than the public corporation itself.  *See* N.Y. Gen. Mun. Law § 50-e(1)(b).  However, a notice of claim is required if the public corporation is obligated to indemnify the individual.  *See id.*; *see also Zwecker v. Clinch*, 279 A.D.2d 572, 573 (2d Dep't 2001) (noting that "the provisions of General Municipal Law § 50-e apply to claims against individual defendants only if a municipality is obligated to indemnify them") (citing *Int'l Shared Servs., Inc. v. County of Nassau*, 222 A.D.2d 407, 408 (2d Dep't 1995)).  "The obligation to indemnify depends upon whether the individual defendants were acting within the scope of their employment when they committed the alleged misdeeds." *Zwecker*, 279 A.D.2d at 573 (finding that the plaintiff's claims were precluded where the plaintiff failed to file a notice of claim with respect to claims brought against municipal employees and offered no evidence that the employees were acting outside the scope of their employment) (citation omitted).  Compliance with Town Law § 67 and General Municipal Law § 50-e is therefore required where a plaintiff seeks to bring a cause of action for damages against a town official in his or her official capacity.  *See W.E. Rest, Inc. v. Wilson*, 38 A.D.3d 762, 763 (2d Dep't 2007).

Although some cases have found that no notice of claim is required when a municipal employee is sued in his or her individual capacity under Executive Law § 296, *see, e.g., Drees v.*

*County of Suffolk*, No. 06-cv-3298, 2007 WL 1875623, *14 (E.D.N.Y. June 27, 2007) (citing

cases), those cases do not involve situations in which the municipal employer is required to

indemnify the employee defendant.  *See id.*; *see also Perez v. Cnty. of Rensselaer, New York*, No.

1:14-cv-950, 2018 WL 3420014, *3 (N.D.N.Y. July 13, 2018).  As New York General Municipal

Law § 50-e(1)(b) and other cases more specifically state, "no notice of claim is required for suits

brought again municipal employees unless the municipality is obligated by law to indemnify such

employee." *Pierce v. Netzel*, No. 98-CV-532, 2004 WL 1055959, *16 (W.D.N.Y. May 10, 2004)

(citing N.Y. Gen. Mun. Law 50-e(1)(b); *Zwecker*, 279 A.D.2d at 573); *see also Van Cortlandt v.*

*Westchester County*, No. 07-CV-1783, 2007 WL 3238674, *7 (S.D.N.Y. Oct. 31, 2007).

 The municipality's obligation to indemnify depends on whether the individual defendant

was acting within the scope of his employment when he committed the alleged illegal acts.  *See*

*Van Cortlandt*, 2007 WL 3238674, at *7.  Although such a determination is typically a question

of fact, the Court may decide "this question as a matter of law where the plaintiff's allegations

regarding an individual defendant are limited to conduct that occurred within the scope of

employment." *Id.* (citations omitted).  Where the individual defendant is alleged to have acted

wrongfully during the discharge of his duties, such acts are said to have occurred within the scope

of employment.  *See McCormack v. Port Washington Union Free Sch. Dist.*, 214 A.D.2d 546,

546-47 (2d Dep't 1995) (citations omitted).

 In the present matter, under the title "Indemnification," Section 3.2 of the Town's

Municipal Code provides that "the Town shall provide for the defense of the officer or employee

in any civil action or proceeding in any State or federal court arising out of any alleged act or

omission which occurred or is alleged i[n] the complaint to have occurred while the officer or

employee was acting or in good faith purporting to act within the scope of his or her public

employment duties."[4] *See* Camillus Municipal Code, Ch. 3, Art. I, § 3.2; *see also* N.Y. Pub. Off. Law § 18 (providing for the defense and indemnification of, among others, employees of towns who are sued for acts or omissions which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties). As Defendants correctly note, based on this provision, the Town has a statutory obligation to defend and indemnify the individual Defendants for actions taken within the scope of their employment as Town employees.  The allegations in the amended complaint refer solely to conduct within the discharge of the individual Defendants as supervisors.  For example, Plaintiff alleges that, in his role as her superior officer, Defendant Nightingale subjected Plaintiff to a hostile work environment and "disparate treatment by denying overtime, instruction, and training opportunities that were afforded to often less-qualified male officers."  Dkt. No. 56 at ¶ 16.  Plaintiff alleges that Defendant Winn, in his role as Chief of Police, failed to remedy the situation or adequately investigate her complaints of discrimination.  *See id.* at ¶¶ 19-23.  Plaintiff similarly alleges that the Town Board Members and Town Supervisor Coogan failed to take action when these issues were brought to their attention.  Although Plaintiff claims that this conduct was done willfully and with malicious intent, there are no allegations involving conduct outside the scope of the individual Defendants' employment.  *See Higgins v. Town of Southampton*, No. 06-cv-3941, 2008 WL 11417335, *4 (E.D.N.Y. Mar. 5, 2008) (granting the individual defendants' motion to dismiss the plaintiff's state law sexual harassment and retaliation claims against them in their individual capacities based on her failure to file a notice of claim, finding that the conduct all occurred within the scope of their employment); *see also McCormack*, 214 A.D.2d at 546-47 (holding that

---

[4] A copy of Section 3.2 of the Municipal Code of the Town of Camillus is available at https://www.townofcamillus.com/documents/112.pdf (last visited Nov. 4, 2022).

the plaintiff was required to comply with notice of claim provisions because the allegation that the school principal engaged in a willful course of malicious conduct designed to defame and inflict emotional distress upon the plaintiff constituted conduct "intimately related to the discharge of his duties as a principal and the legitimate goals of the [school d]istrict") (citations omitted); *W.E. Rest., Inc. v. Wilson*, 38 A.D.3d 762, 762-63 (2d Dep't 2007) (holding that the defendant was acting within the scope of her employment when she "maliciously contacted the Suffolk County Department of Health Services for the purpose of triggering a wastewater review of the plaintiff's restaurant in order to injure the plaintiff"); *DeRise v. Kreinik*, 10 A.D.3d 381, 381-82 (2d Dep't 2004); *Wrobel v. Cnty. of Erie*, No. 03-cv-277, 2004 WL 2922087, *4 (W.D.N.Y. Dec. 16, 2004) (holding that the individual defendants were acting within the scope of their employment when they subjected the plaintiff to unwarranted discipline, harassment, and age discrimination).

Since the individual Defendants were acting within the scope of their employment, Plaintiff was required to comply with the notice of claim requirements.  *See Perez*, 2018 WL 3420014, at *3; *Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 388-90 (S.D.N.Y. 2016) (holding that the plaintiff was required to comply with the notice of claim requirements of Town Law § 67 and General Municipal Law §§ 50-e and 50-i in order to maintain her NYSHRL claims against the individual defendants).  Accordingly, the Court grants this aspect of Defendants' motion to dismiss.

**E.    Tort Claims**

In the fifth, sixth and seventh causes of action, Plaintiff asserts several common law tort claims against Defendants Winn and Nightingale.  *See* Dkt. No. 56 at ¶¶ 56-66.  Defendants contend that her claims for intentional and/or reckless infliction of emotional distress and prima

facie tort are time barred and must be dismissed.  *See* Dkt. No. 57-3 at 29-30.  Additionally,

Defendants argue that Plaintiff has failed to state a claim for prima facie tort.  *See id.* at 30.  In

response, Plaintiff argues that her claims are timely because beginning on March 20, 2020 and

continuing through November 3, 2020, the statutes of limitations and conditions precedent were

tolled by Executive Orders due to the ongoing pandemic.  *See* Dkt. No. 59 at 25-26.  As such,

Plaintiff claims that "the time period between March 20, 2020 and November 3, 2020 should be

excluded in measuring the timeliness of Plaintiff's claims.  This action, commenced on October

13, 2020, is therefore timely."  *Id.* at 25.  In its reply, Defendants contend that, notwithstanding

the tolling of the statute of limitations by Executive Order 202.8, Plaintiff's tort claims are still

time-barred because the applicable statute of limitations expired before the Executive Order went

into effect.  *See* Dkt. No. 60 at 11-13.

### 1. Statute of Limitations

Under New York law, the statute of limitations for intentional/reckless infliction of

emotional distress and other intentional torts is one year.  *See Trayvilla v. Japan Airlines*, 178

A.D.3d 746, 747 (2d Dep't 2019) (citation omitted).  Claims sounding in negligence are normally

subject to a three-year statute of limitations.  *See Durstenberg v. Electrolux Home Prod., Inc.*, 181

A.D.3d 444, 445 (1st Dep't 2020).  Where a claim for prima facie tort is premised only on

intentional conduct, the one-year limitations period applies.  *See 10 Ellicott Square Ct. Corp. v.

Violet Realty, Inc.*, 81 A.D.3d 1366, 1368-69 (4th Dep't 2011) (citations omitted).  The statute of

limitations begins to run when a tort cause of action accrues – "'when all of the facts necessary to

the cause of action have occurred so that the party would be entitled to obtain relief.'"  *B.F. v.

Reproductive Med. Assoc. of New York, LLP*, 30 N.Y.3d 608, 614 (2017) (quotation and other

citations omitted).

31

In the present matter, Plaintiff commenced this action by filing a summons and complaint on October 13, 2020. In her amended complaint, Plaintiff alleges that she "submitted a written statement to the Chief on February 6, 2019 recounting six instances of sexual harassment by Nightingale and identified three witnesses." Dkt. No. 56 at ¶ 21. Plaintiff next alleges that she met with Defendant Winn "approximately two weeks later" to discuss her statement and that it became clear to her that Defendant Winn was more concerned with "protecting Nightingale's reputation than protecting Plaintiff." *Id.* at ¶ 22. Although Plaintiff claims that "[t]he hostile work environment continued as Plaintiff was forced to continue working with Captain Nightingale and Chief Winn with the knowledge that no action would be taken to protect her from further adverse treatment," she does not allege any specific conduct occurring after the middle of February of 2019 until her resignation on August 8, 2019. *Id.* at ¶ 23.

Plaintiff's claim of intentional and/or reckless infliction of emotional distress against Defendant Nightingale is premised on the "extreme and outrageous conduct as demonstrated by his actions set forth above." *Id.* at ¶ 57. Plaintiff, however, has failed to allege any extreme or outrageous conduct by Defendant Nightingale that occurred after the allegations set forth in her February 6, 2019 written statement. As such, this claim against Defendant Nightingale accrued no later than February 6, 2019, and the time to file this claim expired, at the latest, on February 6, 2020.

Similarly, Plaintiff's prima facie tort claim against Defendants Winn and Nightingale is based entirely on conduct occurring no later than the middle of February 2019, when Defendant Winn failed to adequately investigate her claims of discrimination or otherwise take disciplinary action against Defendant Nightingale. Plaintiff's claim accrued when she was made aware of the

alleged inadequate response to her written complaint at the second meeting with Defendant Winn in the middle of February 2019.  As such, this claim is also untimely.

Plaintiff's contention that her time for filing the complaint was tolled warrants little discussion.  On March 7, 2020, New York State Governor Andrew Cuomo issued Executive Order 202, declaring a disaster emergency for the State of New York due to the COVID-19 pandemic.  *See* 9 N.Y.C.R.R. § 8.202.  On March 20, 2020, Governor Cuomo signed Executive Order 202.8, limiting court operations to "essential matters" and declaring that "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the procedural laws of the state ... is hereby tolled from the date of this executive order until April 19, 2020."  *Id.* § 8.202.8.  The Governor issued nine subsequent Executive Orders, collectively extending the first order until November 3, 2020.  *See id.* §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.63, 8.202.67.  Executive Order 202.72 provided that the tolling of time limits established by Executive Order 202.8 would no longer be in effect as of November 4, 2020.  *See id.* § 8.202.72.

Here, the statute of limitations had already expired when Governor Cuomo issued Executive Order 202.8.  Nothing in the Executive Order indicates that it is to be retroactively applicable and, "[b]y its clear terms, it cannot be read to revive already expired time limitations[.]" *Jackson v. Wilcox*, 70 Misc. 3d 1208(A), *1 (Sup. Ct., Alb. Cnty. 2021) (holding that Executive Order 202.8 is not retroactively applicable and it cannot revive already expired time limitations).  Since the statute of limitations expired no later than the middle of February 2019, Plaintiff's claim for intentional and/or reckless infliction of emotional distress and prima facie tort are untimely and must be dismissed.

### 2. Tortious Interference

33

In her sixth cause of action, Plaintiff alleges that Defendants Nightingale and Winn "intentionally interfered with Plaintiff's employment with the Town of Camillus."  Dkt. No. 56 at ¶ 61.  Defendants contend that Plaintiff has failed to allege any of the requisite elements for this claim.  *See* Dkt. No. 57-3 at 30.  In response, Plaintiff alleges that she has plausibly alleged that Defendants Winn and Nightingale tortiously interfered with her employment and the absence of a formal contract is not dispositive.  *See* Dkt. No. 59 at 26-27.

"To establish a tortious interference cause of action, a plaintiff must establish '(1) that [the plaintiff] had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the [plaintiff's] relationship with the third party.'" *Munno v. City of Rochester*, 197 A.D.3d 309, 310-11 (4th Dep't 2021) (quotation omitted).

In the present matter, the Court finds that Plaintiff has failed to plausibly allege a causal connection between any alleged independent tort or malicious conduct and Plaintiff's alleged constructive discharge.  The latest specific tortious or malicious conduct alleged in the amended complaint occurred in February 2019.  Plaintiff's resignation from her position with the Camillus Police Department occurred on August 8, 2019.  *See* Dkt. No. 56 at ¶ 23.  Given the passage of six months between the last improper act and Plaintiff's resignation, the Court finds that Plaintiff has failed to plausibly allege that Defendants' conduct caused injury to Plaintiff's relationship with her employer.

Moreover, the Court agrees with Defendants that Plaintiff's tortious interference claim is an improper attempt to avoid the fact that New York courts do not recognize a claim for wrongful discharge by at-will employees.  Courts have repeatedly held that a plaintiff cannot avoid this

general prohibition against wrongful discharge claims "by casting the cause of action in terms of tortious interference with employment." *Barcellos v. Robbins*, 50 A.D.3d 934, 935 (2d Dep't 2008) (citations omitted); *see also Baker v. Guardian Life Ins. Co. of Am.*, 12 A.D.3d 285, 285-86 (1st Dep't 2004) ("Plaintiff's cause of action for defamation is an improper attempt to circumvent the rule that an at-will employee has no cause of action for wrongful discharge. ...  As an at-will employee, plaintiff can have no cause of action based on a co-employee's alleged tortious interference with his employment. ...  Nor does plaintiff identify any specific employment or business relationship that he was prevented from entering into as a result of defendants' interference, or adequately allege that defendants acted with the sole purpose of harming him, such as would support a claim for tortious interference with prospective business or employment relations") (citations omitted).

Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's tortious interference claim.

### 3. Prima Facie Tort

Defendants argue that, in addition to being time barred, Plaintiff's claim for prima facie tort is subject to dismissal on the merits.  *See* Dkt. No. 60 at 13-14.  Specifically, Defendants contend that the alleged injurious action – sexual harassment and gender-based employment discrimination – is not an act that would otherwise be lawful.  *See id.*  The Court agrees.

The elements of prima facie tort are "(1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332 (1983)).  The Second Circuit has held that "[t]he touchstone" of prima facie tort "is 'disinterested malevolence,'

meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Labs., Inc.*, 900 F.2d at 571 (quoting *Burns*, 59 N.Y.2d at 333).  "[M]otives other than disinterested malevolence, 'such as profit, self-interest, or business advantage' will defeat a prima facie tort claim." *Id.* (quoting *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985)).  "'[P]rima facie tort was designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy, and not to provide a catch all alternative for every cause of action which cannot stand on its legs.'" *Gallagher v. New York City Health & Hosps. Corp.*, No. 16-cv-4389, 2017 WL 4326042, *6 (S.D.N.Y. Sept. 20, 2017) (quoting *Kickertz v. New York Univ.*, 110 A.D.3d 268, 277 (1st Dep't 2013)).

Here, Plaintiff alleges that she was injured by Defendants' sexual harassment and gender-based employment discrimination.  Since this alleged conduct is unlawful, Plaintiff has failed to allege the fourth element of her prima facie tort claim.  Moreover, the claim is duplicative since it "pursues redress for precisely the same injuries that her discrimination and retaliation claims are looking to remedy. " *Peck*, 2021 WL 3710546, at *19; *see also Woytisek v. JP Morgan Chase & Co.*, 46 A.D.3d 331, 331 (1st Dep't 2007) (holding that dismissal of the plaintiff's claim alleging prima facie tort was proper where it was based on the same allegations of harassment and discrimination as his claim for intentional infliction of emotional distress, which was also dismissed) (citation omitted).

Accordingly, the Court finds that Plaintiff's prima facie tort claim is subject to dismissal on this alternative ground.

### 4. Intentional Infliction of Emotional Distress

36

New York requires four elements to sustain a claim of intentional infliction of emotional distress: (1) "extreme and outrageous conduct"; (2) "intent to cause, or disregard of a substantial probability of causing, severe emotional distress"; (3) "a causal connection between the [outrageous] conduct and injury"; and (4) "severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993) (citation omitted).

This species of tort is disfavored by New York courts.  *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014).  In particular, the first element of outrageous conduct is "'rigorous, and difficult to satisfy.'" *Howell*, 81 N.Y.2d at 122 (quotation omitted).  In fact, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983).

"Insults, bullying, and general harassment do not usually constitute a claim for [intentional infliction of emotional distress] under New York law." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 535 (S.D.N.Y. 2015).  Neither does failing to investigate or appropriately respond to claims of harassment to "two, three, or four complaints." *Turley*, 774 F.3d at 161.  As a result, "New York courts regularly deny intentional infliction of emotional distress claims in employment discrimination cases." *Daniels v. Health Ins. Plan*, No. 02-cv-6054, 2005 WL 1138492, *3 (S.D.N.Y. May 12, 2005) (collecting cases).  In fact, the Second Circuit has held that forcing a plaintiff to take a polygraph under suspicion of theft solely because of her race is not enough to state a claim for intentional infliction of emotional distress.  *See Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985).

Measured against that high bar, Plaintiff's intentional infliction of emotional distress claim falls far short.  Without providing specific details, Plaintiff alleges that Defendant Nightingale

subjected her to a hostile work environment and gender-based discrimination and that Defendant

Winn failed to properly investigate her complaints regarding the same.  These allegations are

insufficient to plausibly allege the requisite "extreme and outrageous conduct."

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's intentional

infliction of emotional distress claim on this alternative ground.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 57) is **GRANTED in part and

DENIED in part**;[5] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 9, 2023
        Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**

---

[5] As a result of this Memorandum-Decision and Order, the only remaining claims are
Plaintiff's Section 1983 claims against Defendant Nightingale and the Town of Camillus.