UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICIA ARNOLD,

|  |  |
|---|---|
| Plaintiff, | **SECOND**<br>**AMENDED COMPLAINT** |
| v. | 5:20-CV-1364 (MAD/ML) |

TOWN OF CAMILLUS, NEW YORK; POLICE CHIEF
THOMAS WINN;  CAPTAIN JAMES NIGHTINGALE;          Jury Trial Demanded
TOWN SUPERVISOR MARY ANN COOGAN; DAVID
CALLAHAN; JOY FLOOD; DICK GRIFFO; STEVEN
JAMES; MIKE LaFLAIR; MARY LUBER; and JOHN
DOE(S) and JANE DOE(S), in their individual and official
capacities as officials, officers, agents, employees, and/or
representatives of the TOWN OF CAMILLUS and/or the
CAMILLUS POLICE DEPARTMENT,

Defendants.
_____

Plaintiff, PATRICIA ARNOLD, by and through her undersigned counsel, as and for a

Second Amended Complaint against Defendants, TOWN OF CAMILLUS, NEW YORK;

POLICE CHIEF THOMAS WINN;  CAPTAIN JAMES NIGHTINGALE; TOWN

SUPERVISOR MARY ANN COOGAN; DAVID CALLAHAN; JOY FLOOD; DICK GRIFFO;

STEVEN JAMES; MIKE LaFLAIR; MARY LUBER; and JOHN DOE(S) and JANE DOE(S), in

their individual and official capacities as officials, officers, agents, employees, and/or

representatives of the TOWN OF CAMILLUS and/or the CAMILLUS POLICE

DEPARTMENT, states as follows:

## INTRODUCTION

1. The nature of this action is one which seeks to recover money damages as a result of

the intentional, reckless, negligent, and/or grossly negligent conduct of the Defendants herein. Plaintiff has been subjected to violations of her rights under the Constitution and the laws of the United States and State of New York.

## JURISDICTION AND VENUE

2.   Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1441(a) and the Constitution and laws of the State of New York and the United States of America. Pursuant to a December 22, 2023 Order of the Appellate Division, Fourth Department, a Notice of Claim was served upon Defendants on December 26, 2023.

3.   Venue is proper pursuant to 28 U.S.C. § 1441(a).

## PARTIES

4.   Plaintiff Patricia Arnold is a female citizen of the United States and resident of the County of Onondaga and State of New York.  She was at all times relevant herein an employee or former employee (Police Officer) of the Camillus Police Department since 2011.

5.   Defendant, Town of Camillus is a municipal corporation organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at 4600 West Genesee Street, Syracuse, New York 13219.  At all times relevant hereto, this Defendant employed Plaintiff or formerly employed Plaintiff and the hereinbefore named individual Defendants. Defendant Town of Camillus and its employees are by law responsible for the wrongdoing of officers and employees of the Town of Camillus Police Department and responsible for the direct participation and endorsement of the unconstitutional and unlawful customs, policies, and practices of the Town of Camillus and other Defendants. This Defendant was also aware, through its officers, legislators, and agents, of the long-standing unlawful and

-2-

discriminatory customs, policies and practices of the Town and other named Defendants, and deliberately and/or with reckless disregard and/or negligently failed to take action to correct and/or prevent the unlawful customs, policies and practices of the other Defendants.

6. At all times relevant to this Complaint, Defendant Thomas Winn, was the duly appointed Chief of the Defendant Town of Camillus Police Department.

7. At all times relevant hereto, Defendant, James Nightingale was a duly appointed Sergeant or Captain of the Town of Camillus Police Department.

8. At all times relevant hereto, Defendant Mary Ann Coogan, was the duly elected Town Supervisor of Defendant, Town of Camillus.

9. At all times relevant hereto, Defendants David Callahan, Joy Flood, Dick Griffo, Steven James, Mike LaFlair, and Mary Luber were members of the Camillus Town Board.

10. Defendants Winn, Nightingale, Coogan, Callahan, Flood, Griffo, James, LaFlair, and Luber had the power to make personnel and policy decisions regarding Plaintiff's employment and, as such, are Plaintiff's employers.  Further, said Defendants are responsible, by law, for enforcing the rules and regulations of the State of New York and Town of Camillus and for insuring that employees of the Police Department obey the laws of the State of New York and the United States.  Additionally, Defendants Winn, Coogan, Callahan, Flood, Griffo, James, LaFlair, and Luber are responsible for, among other things, the training, supervision, discipline and conduct of the other named Defendants, Winn and Nightingale.  Defendants are individually and collectively policymakers with supervisory authority over Plaintiff.

11. All of the above-named Defendants are responsible for the establishment and perpetuation of a hostile work environment and the discriminatory and retaliatory policies,

customs, practices, and habits of the Camillus Police Department. The individual Defendants also aided and abetted the unlawful conduct described herein. Each Defendant is equally responsible and legally accountable for the unlawful conduct of the others and their actions or failures to intercede and prevent the discriminatory and retaliatory conduct.  Defendants failed to promptly investigate discrimination as required by Department and Town rules and regulations.

12.   During all times mentioned in this Complaint, Defendants were acting under color of law, namely, under color of the Constitutions of the United States, statutes, laws, charters, ordinances, rules, regulations, customs, usages and Constitution of the State of New York and the Town of Camillus in the State of New York.

## **FACTS**

13.   This Complaint is in all respects based upon past, continuing, and ongoing harm and injury caused by Defendants through their discriminatory and retaliatory acts and policies.  Such acts and polices are illegally imposed on Plaintiff by Defendants employing and endorsing a policy which treats women as second class citizens, subjects them to stereotypes, and excludes women from certain assignments, training, positions of visibility, authority, and power, or denies and delays women assignments, training, promotions or transfers which lead to supervisory and management opportunities while affording them to male counterparts. Denying women access to these assignments, training, and positions leads to lower pay and fewer benefits and forces women in the department to suffer unequal benefits and privileges of employment as compared to male officers.

14.   Plaintiff was employed by Defendants from 2011 through August 8, 2019.  Plaintiff's position was Police Officer.  Plaintiff is female, a member of a protected class, and her protected

status is known to the Defendants.

15.   During her employment, Plaintiff was subjected to a campaign of harassment on the basis of her gender and retaliation for her opposition to unlawful and discriminatory treatment. This discrimination, harassment and retaliation caused her emotional, psychological, financial, and physical distress that gives rise to the instant lawsuit.

16. Beginning in or about 2011, Defendant, then-Sergeant James Nightingale made disparaging comments on the basis of Plaintiff's gender, starting an almost decade-long campaign of harassment. Nightingale continued to harass Plaintiff in the form of inappropriate and uninvited touching of her arms, shoulders, and back. This was frequent enough such that Plaintiff was subject to ridicule and Nightingales's treatment of Plaintiff  became a running joke among coworkers. Additionally, as a supervisor, Nightingale subjected Plaintiff to disparate treatment by denying overtime, instruction, and training opportunities that were afforded to often less-qualified male officers.

17.   Plaintiff made Chief Thomas Winn aware of Nightingale's sexual harassment and discriminatory denial of opportunities during a February 2018 meeting.  She expressed fear of retaliation from Nightingale and declined to file a formal complaint at that time.  Plaintiff told Winn that it was her hope that he would address Nightingale's behavior without her having to make a formal complaint.  He declined.

18.   After the February 2018 meeting, Plaintiff continued to be subjected to a hostile work environment caused by Nightingale's treatment. The inappropriate touching continued and was frequently joked about by coworkers. In Summer 2018, Plaintiff was the instructor for a sexual harassment training, but was only permitted to instruct female secretaries. During this training

session, Nightingale brazenly entered the room, interrupted Plaintiff, and prematurely ended the instruction. In Plaintiff's experience, male officers were not so limited in their opportunities to instruct or interrupted in the midst of instruction.

19. Even though Winn was aware of the discriminatory treatment of Plaintiff by Defendant Nightingale, he required her to attend an August 28, 2018 ceremony to celebrate Nightingale's promotion to Captain. This caused Plaintiff significant stress and discomfort not only because Winn knew of Nightingale's behavior towards her from her and others, including Lt. Burlingame, but also because Winn still gave him a substantial promotion that bypassed the rank of Lieutenant altogether. Further distressing, as Captain, Nightingale would be in charge of Internal Affairs, which meant that he would be responsible for investigating claims of harassment. The decision to promote Nightingale signaled to Plaintiff that the inappropriate touching and discrimination would never be addressed; the sexual harassment continued with no one to complain to.

20. Plaintiff met with Chief Winn in January 2019 and again reported Nightingale's harassment and discrimination. When she stated her intention to file a formal complaint of discrimination and harassment this time, Winn became hostile and aggravated. His behavior and demeanor signaled to her that he did not support her and did not want her to file the complaint.

21. Plaintiff submitted a written statement to the Chief on February 6, 2019 recounting six instances of sexual harassment by Nightingale and identified three witnesses. Winn was again hostile toward her and intimidated her into declining the opportunity to have Town Supervisor Mary Ann Coogan investigate the allegations instead of himself. He stated to Plaintiff that Town Supervisor Coogan was aware of Plaintiff's allegations. Defendant Coogan became aware of

Plaintiff's allegations of sexual harassment in 2018 and, upon information and belief, shared this information with each Defendant Board Member at such time.  Neither Defendant Coogan nor any of the Defendant Board Members took any action to investigate Plaintiff's allegations or otherwise protect her from the discriminatory conduct, knowing that they had a duty to do so. Such actions constitute a policy, custom and practice of discrimination and retaliation.

22.   Approximately two weeks later, Winn met with Plaintiff to inform her that Nightingale had acknowledged "he might have done" the reported discriminatory and harassing behavior.  Winn did not speak with any of Plaintiff's witnesses; talking to Nightingale was the beginning and end of the "investigation." The Chief suggested Plaintiff could avoid contact with Nightingale by reporting to the Lieutenant Burlingame going forward, but did little if anything to discipline the harasser. He told her that he had advised Nightingale to keep the allegations private to himself and asked Plaintiff who else she had told. It is clear that Chief Winn was more concerned with minimizing the incidents and protecting Nightingale's reputation than protecting Plaintiff and others from unrelenting sexual harassment and discrimination.

23.   The hostile work environment continued as Plaintiff was forced to continue working with Captain Nightingale and Chief Winn with the knowledge that no action would be taken to protect her from further adverse treatment. The associated anxiety and dread caused her tightness in her chest and insomnia. Ultimately, Plaintiff was forced to resign from Camillus PD on August 8, 2019 to escape this hostility and protect her health.

24.   The policy and practice of the Defendants as related to her complaints of sexual harassment endorsed and condoned said behavior which had the effect of requiring her to submit to unwelcome sexual advances and other verbal or physical conduct of a sexual nature as: 1)

submission to such conduct was made, either explicitly or implicitly, a term or condition of her employment; 2) submission to or rejection of such conduct by Plaintiff was used as the basis for employment decisions affecting her; and 3) the conduct of the Town and individual Defendants had the purpose or effect of unreasonably interfering with Plaintiff's work performance and creating an intimidating, hostile, or offensive working environment.

25.     In July 2019, prior to her resignation, Plaintiff notified PBA President Jay Pollard that she was leaving Camillus PD due to and as a result of Chief Winn and the Department's lack of investigation or other adequate response to her complaints about Nightingale. Pollard and the PBA Executive Board began investigating other complaints about Nightingale's behavior. On March 4, 2020, Pollard met with Town Supervisor Coogan who was again made explicitly aware of Plaintiff's harassment complaints and the other complaints uncovered by the PBA's investigation.

26.     Plaintiff subsequently, on March 11, 2020, met with Supervisor Coogan herself for an "exit interview" at Camillus Town Hall conducted at the request of the PBA. Also present at this meeting was Town Board member Jay Flood. In response to her questioning regarding why Plaintiff left the department, she once again recounted the harassment she faced, her complaints to Chief Winn, her formal harassment complaint, and Winn's subsequent sham "investigation." Notably, Coogan acknowledged that she was aware of Plaintiff's original complaint in 2018. At least three times during this interview, Coogan and Flood attempted to stop Plaintiff from continuing; they did not genuinely want to know the details of what she had faced and consistent with the Town's custom and policy as implemented previously, sought to suppress Plaintiff from speaking about and turn a blind eye to sex discrimination and harassment.

-8-

27.     On July 13, 2020, due to Coogan's refusal to meet, the PBA wrote a letter demanding the Town Board take action on the substantial misconduct uncovered within Camillus PD. Coogan, on July 15, met with Pollard and agreed to have an outside firm investigate these allegations. The Town hired Phillip J. LeRoux of Affirmed H.R. Consulting, LLC to conduct this investigation.  Upon information and belief, the hiring of this company to do said "investigation" was based in large part to his association and friendship with David Ferrara, Town Attorney.

28.   The acts of Defendants have caused Plaintiff extreme anxiety, stress, fear, sleeplessness, concern, headaches, stomach upset, tension, nervousness, pain, insomnia, damage to her name and reputation, and other injury.

29.   At all times mentioned in this Complaint, Defendants acted both individually and/or jointly and in concert with each other.  Each Defendant had the duty and the opportunity to protect Plaintiff from the unlawful actions of the other Defendants but each Defendant failed and/or refused to perform such duty, thereby proximately contributing to and causing Plaintiff's injuries.

30.   Plaintiff is a civil service employee and a member of the Union. Such employees are protected by the contract in effect entered into by the Town of Camillus with its employees.  This contract, which governs, *inter alia*, employees' work schedules, overtime compensation, and assignments, provides for the fair and equal treatment in matters of pay and terms of employment without regard to gender, race, age, or other classification.

31.   These actions are in violation of the New York State Human Rights Law and laws preventing discrimination and violation of civil rights.  The Defendants have participated in and maintained a long standing practice, custom and policy of discrimination against women and aided

and abetted the discriminatory/retaliatory conduct complained of herein.

32.   The Defendants foster an atmosphere of discrimination, retaliation, hostility, and harassment based upon sexual factors.  Such treatment was and has been known to occur for years and the Defendants have deliberately, recklessly, and/or negligently participated in such acts and/or failed to cease and discourage such practices.  Despite knowledge of this behavior, Defendants have deliberately and/or recklessly failed to correct, cease, or otherwise remedy such practices.

33.   Instead, Defendants have encouraged, approved, continued, expanded, concealed, perpetuated, and participated in said hostile, illegal, and unconstitutional practices to Plaintiff's detriment and injury.

34.   Defendant Town of Camillus (Town) has a custom, practice and policy of discrimination against women.  The conduct complained of herein was due to this unlawful custom, practice and policy, which deprived Plaintiff of equal protection under the law.    Females in the Police Department have been subjected to disparate and discriminatory treatment by the Town with respect to hiring, assignments, promotions, investigations, and discipline.  Examples are outlined herein and include the following conduct.

35.   Defendant Town disqualified and refused to hire, on different occasions over the course of approximately ten (10) years, six (6) female applicants without basis in favor of fifteen (15) less qualified male applicants.  Plaintiff learned that Defendants' false excuse for not hiring some or all of these women was due to their "background," yet each was thereafter hired by other law enforcement agencies.

36.   Defendant Town denied Plaintiff's two (2) requests to attend "street survival school"

training while selecting approximately eight (8) men instead, some of whom had less seniority than Plaintiff.

37.   Defendant Town ignored Plaintiff's requests, made to Defendant Nightingale, for permission to attend training sponsored by Federal/State law enforcement organizations, including an FBI negotiator instruction school.   Upon information and belief, male officers are routinely permitted to attend similar training programs.

38.   Defendant Town selected a male sergeant over a female sergeant for promotion to lieutenant.   After the female sergeant complained that her non-selection was discriminatory, she was assigned as a "Staff Sergeant," a position that had been previously eliminated.   Upon information and belief, the female sergeant was given this position to avoid scrutiny of the male officer's promotion.

39.   Upon information and belief, Defendant Town disregarded a female employee's complaint that Chief Winn was subjecting her to harassment because she became intimately involved with a male officer.   After learning of the relationship, Winn extended the female employee's probation without basis and subjected her to undue scrutiny of her private life.   Winn does not subject male employees to similar scrutiny.   The employee complained to Defendant Coogan regarding Winn's behavior and Coogan disregarded the complaint.

40.   Defendant Town treats serious misconduct of male officers with tolerance. For example, a male officer was given a "slap on the wrist" after he was involved in an off-duty physical altercation.   This male officer's conduct was particularly egregious and required the intervention of an outside law enforcement agency.   The male officer reportedly used a racial slur during the incident.   Notwithstanding the serious nature of the male officer's misconduct, his

employment was retained by the Town.  By contrast, Defendant Town imposes stricter scrutiny for alleged misdeeds by female officers.  Defendant Town issued a counseling memo to Plaintiff. Plaintiff disputed its accuracy, requested its removal, and was assured by Defendant Winn that it would be removed.  When she reviewed her personnel file a year later, it remained in her file. Other than this counseling memo, Plaintiff had a clean disciplinary record.  Upon information and belief, had such a counseling memo been issued to a male officer it would have been purged.

41.   By acting as described above, Defendants acted with malice or with reckless disregard for Plaintiff's rights, causing her to suffer embarrassment, humiliation, degradation, anxiety, stress, loss of pay, loss of benefits, harm to reputation and good name, insomnia, anger, family discord, headaches, stomach upset, nervousness, loss of appetite, and pain.  Such acts by Defendants have injured Plaintiff, subjected her to extreme emotional harm, and she is entitled to compensation therefor.

**AS AND FOR A FIRST CAUSE OF ACTION
PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT
TOWN AND DEFENDANT NIGHTINGALE**

42.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 41 above.

43.   Defendants violated rights guaranteed to Plaintiff under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that she was subjected to discrimination, including disparate treatment, a hostile work environment, and constructive discharge, because of gender.

44.   With respect to the named municipal Defendant, the actions and omissions as

-12-

aforementioned constitute municipal policy because they are the actions and omissions of final policy making officials of the Town of Camillus.  In addition, said municipal Defendant created, maintained and/or fostered a custom, policy or practice of discrimination thereby causing Plaintiff injury and harm.  Finally, said municipal Defendant failed to adequately train officers and supervisors on the rights of employees to be free from discrimination and retaliation.

45.  Plaintiff has sustained damages by reason of the Defendants' wrongful actions and omissions.

**AS AND FOR A SECOND CAUSE OF ACTION
PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT
TOWN AND DEFENDANT NIGHTINGALE**

46.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 45 above.

47.  Defendants violated rights guaranteed to Plaintiff under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that she was subjected to retaliation, including disparate treatment, a hostile work environment and constructive discharge, because of her opposition to gender discrimination and retaliation.

48.  With respect to the named municipal Defendant, the actions and omissions as aforementioned constitute municipal policy because they are the actions and omissions of final policy making officials of the Town of Camillus.  In addition, said municipal Defendant created, maintained and/or fostered a custom, policy or practice of discrimination thereby causing Plaintiff injury and harm.  Finally, said municipal Defendant failed to adequately train officers and

supervisors on the rights of employees to be free from discrimination and retaliation.

49.  Plaintiff has sustained damages by reason of the Defendants' wrongful actions and omissions.

## AS AND FOR A THIRD CAUSE OF ACTION
## PURSUANT TO THE NYS HUMAN RIGHTS LAW
## AGAINST ALL DEFENDANTS

50.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 49 above.

51.  Defendants violated rights guaranteed to Plaintiff under the Human Rights Law of the State of New York in that Plaintiff was subjected to discrimination, including disparate treatment, a hostile work environment and constructive discharge, because of gender.

52.  Plaintiff has sustained damages by reason of the Defendants' wrongful actions and omissions.

## AS AND FOR A FOURTH CAUSE OF ACTION
## PURSUANT TO THE NYS HUMAN RIGHTS LAW
## AGAINST ALL DEFENDANTS

53.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 above.

54.  Defendants violated rights guaranteed to Plaintiff under the Human Rights Law of the State of New York in that Plaintiff was retaliated against for opposing discrimination.

55.  Plaintiff has sustained damages by reason of the Defendants' wrongful actions and omissions.

56.  The aforesaid acts and/or omissions of Defendants were intended to cause harm and injury to Plaintiff and, as a result, Plaintiff has suffered damages in the form of a reduction in wages and benefits, including a uniform allowance, time-off, and longevity pay (totaling approximately $6,000 for the year 2020) and is entitled to recover for those injuries and damages as previously set forth herein.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendants, jointly and severally, as follows:

a.  an Order enjoining the Defendants from further violating Plaintiff's rights;

b.  compensatory damages in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

c.  punitive damages as against the individuals in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

d.  attorneys' fees, costs and disbursements of this action;

e.  declaratory relief finding each Defendant violated Plaintiff's rights; and

f.  such other and further relief the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: January 22, 2024
at Blossvale, New York

    s/ A.J. Bosman
A.J. Bosman, Esq.
Robert Strum, Esq.
Bosman Law, L.L.C.
*Attorneys for Plaintiff*
Office and Post Office Address
3000 McConnellsville Road
Blossvale, New York 13308
Telephone: (315) 820-4417

-15-